The opinion of the Court was delivered by
Wardlaw, J.
In the case of Powell vs. Buck, 4 Strob. 427, the defendant was made to answer to the true owner for a raft of timber, which he had purchased from a carrier under circumstances very similar to those which exist in this case. ■ But it will be observed that there a verdict had been found for the plaintiff under instructions which submitted to the jury questions of imputed fraud; and we cannot suppose that the case was understood by the Court to settle that, in all cases of sale by a raftsman, there should be accountability from the purchaser to the true owner without consideration of special circumstances, although there is much in the opinion to favor such a supposition. If special circumstances, to be weighed by a jury, may modify the general *336 rule, tben tlie case before us must be tried again, for all special circumstances were excluded from view by tbe application of a rule wbicb was taken to be inflexible.
Tbe general rule of tbe common law unquestionably is, tbat a title to personal property cannot be acquired from a person, wbo bas bimself no title to it, except only by a bona fide sale in market overt. In all cases of sale not in market overt (and we bave no market overt in tbis State,) tbe rightful owner, having committed no fault, may recover tbe goods sold, or their value, from an innocent purchaser.
In like manner tbe general rule is that a special agent can bind bis principal only to tbe extent of tbe authority conferred by tbe principal; but in relation to agency tbis rule is modified by a “principle wbicb prevades all cases of agency, whether it be a general or a special agency, to act. Tbe principal is bound by all acts of bis agent within tbe scope of tbe authority, wbicb be bolds him out to tbe world to possess, although be may bave given him more limited private instructions, unknown to tbe persons dealing with him ; and tbis is founded on tbe doctrine tbat where one of two persons must suffer by tbe act of a third person, be wbo bas held tbat person out as worthy of trust and confidence, and having authority in tbe matter, shall be bound by it.” Story on Agency, § 127 *
Tbis doctrine applies with equal force to protect third persons, where a principal bas clothed bis agent, general or special, with all tbe external indicia of projaerty, and third persons bave dealt with tbe agent, supposing him to be tbe sole principal, without any knowledge tbat tbe property involved belonged to another person. Story on Agency, § 93, 227, 443.
*337 Mr. Jnstioe Buller said in Fitzherbert vs. Mather, 1 T. R. 16; “ It is tbe common question every day at Guildhall, where one of two innocent persons must suffer by the fraud or negligence of a third, which of the two gaye credit ?”
Our Court has frequently applied this doctrine in behalf of creditors, who have extended credit upon faith of the ordinary indicia of ownership, accompanying personal property held by one to whom the real owner has committed the possession in such way as to enable him to impose upon strangers ignorant of the true title ; Archer vs. McFall, Rice, 77; Ford vs. Aiken, 1 Strob. 90; Ford vs. Aiken, 4 Rich. 133 ; Burgess vs. Chandler, 4 Rich. 175. These were all cases of possession acquired by a son-in-law from a father-in-law, but they were instances of the application of the general principles we have mentioned, for in neither of them was there in fact a gift, although the appearance of one had imposed upon creditors. Innocent purchasers are not entitled to less favor, and are not less favored by the law, than creditors.
There is no disposition to trespass upon the domain of Equity Courts by taking cognizance of a plea of purchaser for valuable consideration without notice, and making that plea at law available against a legal title when it would not be so held in Equity; — but we only apply an acknowledged principle, which is so deeply founded in justice as to have become a maxim, and which is indispensable to the security of many ordinary transactions; Root vs. French, 13 Wend. 571. “ Courts of law,” (says Mr. Story in his treatise on Agency, § 91,) “ also, as far as they may, in regard to personal property, where no technical formalities are necessary to a transfer, now act upon the same enlightened principles of justice. Thus where a man without objection, suffered his own goods to be sold by an officer at public auction, to satisfy an execution against a third person in whose possession they were at the time, it was ' held, in favor of the purchaser at the sale, that his conduct might well authorize the *338 conclusion that be bad assented to the sale, or bad ceased to be the owner.” Pickard vs. Sears, 6 Add. & Ellis, 474. The Court there thought that it should have been left to the jury to say whether the plaintiff had not ceased to be the owner,— Lord Denman saying, “ The rule of law is clear that where one by his words or conduct wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time.” This looks like bringing only intentional impositions under the rule, but our cases in relation to creditors, before cited, have expressly ruled that it is immaterial whether the deceitful appearance was held out by the true owner designedly or unintentionally. That the creditor or purchaser was actually deceived is not of itself sufficient; there must have been on the part of the true owner, some act or conduct calculated to lead to deception, but that act or conduct may be only negligence and not fraud, — only imprudence and not evil design. The question between two persons entitled to equal favor, of whom one must suffer, is, who gave to the faithless agent that credit, which enabled him to effect an imposition? If the true owner did so, then the fraud or folly of his agent would become his fraud, if he should shift the burden of loss from himself to an innocent purchaser.
Now in the case which is before us, the plaintiff, true owner of the timber, is prima facie entitled to recover the value of it from the defendant, who purchased from Huggins the raftsman; but the plaintiff’s right is not so conclusive that it may not be rebutted. If it should appear that the defendant or his agent knew that Huggins was only an agent, then the defendant will be bound to abide the consequences of the agent’s having exceeded his authority, unless he can show that the-true owner held Huggins out to the world as one having authority to sell the raft. If it should *339 appear that neither the defendant nor bis agent knew that Huggins was an agent, but that they dealt with him supposing him to be the true owner, then it will be necessary for the defendant to go farther, and show some act or conduct of the plaintiff which led to the defendant’s loss, as that the plaintiff put Huggins into possession of the raft, with the usual indicia of ownership, so as to enable him to hold out appearances which would have misled a prudent purchaser. Whether the possession of such a raft by two white men, who said that they had cut the timber and owned it, was sufficient evidence of ownership, the jury will consider, with reference to evidence that may be given of the usual course of the business of cutting, rafting and selling timber on the Pee Dee.
It will not do to say that, if the jury should regard Huggins as entitled to sell, then no owner of timber can trust it to a carrier without incurring the risk of loss. One obvious answer is, let the owner employ an honest or a responsible carrier; and another is, l'et him take care to show by some suitable means that the carrier is neither the owner nor an agent to sell.
Nor will it do to imagine cases in which the doctrine, that may protect the purchaser in this case, may be carried to an alarming extent, in derogation of the rights of true owners ; as for instance cases of negroes hired for a year, of horses hired from livery stables, and of articles lent. As to negroes mere possession is upon safe grounds of distinction held to be ordinarily much feebler .evidence of ownership, than it is of other chattels; (Maples vs. Maples, Rice, Eq. 300,) and as to horses and other articles hired or lent, surrounding circumstances will determine between the true owner and an innocent purchaser, which has by any unfairness, or imprudence, brought upon himself loss ; and if both are equally free from all fault the ultimate question will be, who gave credit to the actual wrong doer. Even where the third person who did *340 tbe wrong was known to be only an agent it is “ a general role when a commodity is sent in sncb a way, and to suck a place, as to exhibit an apjsarent purpose of sale, the principal will be bound, and the purchaser will be safe, although the agent may have acted wrongfully, and against his orders or duty, if the purchaser has no knowledge thereof.” Story on Agency, § 94, 73, note; Pickering vs. Bush, 15 East, 43. Stronger is the case, where the commodity is sent as above, and the person in possession is so held out as to appear the true owner.
Without intending then to indicate any opinion, and really without having formed any, on the questions which as we have said, should have been submitted to the jury, we direct a new trial.
Motion granted.
WhitNer and MuNRO, JJ., concurred.

 This opinion is written under such pressure that its conclusions depend almost entirely on Mr. Story’s test and citations — usually a safe dependence.